IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARWIN GURTO AND ARNESTA GURTO, H/W<br>1304 Lewis Road<br>Pierpont, OH 44082,<br><br>PLAINTIFFS<br><br>V.<br><br>UNTED STATES OF AMERICA,<br><br>DEFENDANT | CIVIL ACTION<br><br><br><br>Civil Action No. |

## COMPLAINT

Plaintiffs, Darwin Gurto and Arnesta Gurto, h/w, file this file this Complaint against United States of America (Defendant.) Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1. This case sounding in medical malpractice involves a claim for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. §1346. Jurisdiction is based on 28 U.S.C. §1331 (federal question), 42 U.S.C. §1346, et seq. (FTCA litigation) and 28 U.S.C. §1367 (supplemental jurisdiction).

2. This matter is brought under the Federal Tort Claims Act.

3. Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

## THE PARTIES

4. Plaintiff Darwin Gurto is an individual and adult citizen of the state of Ohio and resides at 1304 Lewis Road, Pierpont, OH 44082 and files this Complaint.

5. Plaintiff Arnesta Gurto is the wife of Darwin Gurto. Mr. & Mrs. Gurto reside at 1304 Lewis Road, Pierpont, OH 44082 and file this Complaint.

6. Defendant United States of America d/b/a Pittsburgh Veterans Administration Medical Center ("Pittsburgh VAMC") is a state-chartered hospital and health care facility. See, e.g., 36 Pa. C.S.A. §3504.1. The Pittsburgh VAMC maintains its principal place of business at 4100 Allequippa Street, Pittsburgh, PA 15213. The Pittsburgh VAMC is a state agency within the meaning of 28 U.S.C. §2674. The Pittsburgh VAMC includes Dr. Rick Scanlan as well as all other employees, agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees. As stated more fully herein, a claim for direct corporate negligence is also asserted against this Defendant.

7. In doing the acts alleged herein, Dr. Scanlan was acting as the actual, apparent and/or ostensible agents and/or employees of Defendant United States of America, that is Pittsburgh VAMC, acting within the course and scope of their agency and/or employment with Defendant, United States of America and Pittsburgh VAMC.

8. All physicians, podiatrists, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of the United States of America and specifically Pittsburgh VAMC, including but not limited to Dr. Rick Scanlan and the Department of Podiatry as well as the Departments of Radiology and Physical Therapy who are responsible for monitoring, treating, and caring for Darwin Gurto from February of 2014 through January

2

2016 were acting as duly authorized, actual, apparent and/or ostensible agents, servants, and employees of Defendant United States of America and Pittsburgh VAMC, and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Pittsburgh VAMC. The identity of any other individuals involved in Mr. Gurto's care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

9. At all times relevant hereto, Darwin Gurto was under the medical care, treatment, and attendance of Defendant directly or through its agents, servants and/or employees including ostensible agents identified above and under their direct control or right to control.

## GENERAL ALLEGATIONS

10. On or about February 24, 2014 Darwin Gurto was seen in the Pittsburgh VAMC Podiatry Clinic for complaints of pain in his right foot. He was noted to have a painful deformed right foot following bunion surgery years prior. He was seen by Dr. Bonnie Nicklas who found that the right foot had mid adductus type of foot with a hallux carus which is in rigid dorsiflection. The left foot was noted to be "essentially normal" but with a mild dorsal prominence over the first metatarsal head.

11. On April 6, 2014, Mr. Gurto returned to the Pittsburgh VAMC and was seen by Dr. Rick Scanlan a podiatrist who found a hallux varsus deformity with medial deviation of the right hallux of the right foot and an irregular osteochondral defect on central aspect of the talar dome of the left ankle.

12. On April 9, 2014, Plaintiff Mr. Gurto returned to the Pittsburgh VAMC Podiatry Clinic complaining of right foot hallux varus deformity and left ankle pain with range of motion. Dr. Scanlan recommended surgery on the right foot and waiting six months before focusing on

left foot.

13.     On April 21, 2014, Plaintiff Mr. Gurto underwent a right first metatarsophalangeal joint fusion performed by Dr. Rick Scanlan and Dr. Emmy Oji. The surgery was noted to go without incident or complications.

14.     On or about September 14, 2014, Plaintiff Mr. Gurto underwent radiologic examination of his left foot which revealed moderate degenerative changes of the first MTP joint; a bipartite lateral sesamoid is noted. Additionally noted was mild IP joint narrowing of the great toe.

15.     On or about September 17, 2014, Plaintiff Mr. Gurto returned to the Pittsburgh VAMC Podiatry Clinic and was seen by Dr. Scanlan who noted that Mr. Gurto's right foot was improving but Mr. Gurto continued to complain of significant pain in his left ankle causing instability and difficulty walking. On examination Dr. Scanlan found significant joint effusion with point tenderness and limited range of motion in the left ankle.

16.     The radiology performed at that time revealed the left ankle to have lucency at the mid talar dome with minimal articular depression corresponding to known osteochondral lesion.

17.     On or about February 13, 2015, Plaintiff Mr. Gurto returned to Pittsburgh VAMC Podiatry Clinic for preoperative evaluation for ongoing concern regarding left ankle pain. Mr. Gurto expressed his concerns regarding the risk of multiple surgeries and Dr. Scanlan recommended a left ankle fusion as the best option for repair of the osteochondral defect ("OCD.")

18.     On February 23, 2015, Plaintiff Darwin Gurto underwent left ankle fusion and left naviculocuneiform mid-foot fusion by Dr. Rick Scanlan at the Pittsburgh VAMC. The interoperative findings were consistent with the preoperative diagnosis of left ankle arthritis,

talar dome OCD times two and navicular cyst with mid-foot degenerative changes. The surgery was described as proceeding without incident.

19. On or about March 5, 2015, Mr. Gurto was seen by Dr. Scanlan at the Pittsburgh VAMC podiatry clinic for post operative follow-up. Mr. Gurto reported considerable pain. He was prescribed a large pneumatic walking boot and discharged.

20. On March 18, 2015, Mr. Gurto returned to the Pittsburgh VAMC podiatry clinic under the care of Dr. Scanlan. Mr. Gurto again complained of significant discomfort particularly, left lower extremity pain at the level of the calf. There was no unilateral swelling found but tenderness with compression of the left calf. Venous Dopplers were performed which were negative for DVT.

21. On or about April 15, 2015, Mr. Gurto returned to the Pittsburgh VAMC podiatry clinic under the care of Dr. Scanlan. Mr. Gurto continued to complain of left lower extremity swelling and pain, the pain being sharp and shooting in nature. Dr. Scanlan found that the foot was in appropriate position and alignment. Dr. Scanlan recommended that Mr. Gurto remain non-weight bearing with the CAM boot for the next two weeks but provided no explanation for his continued pain and swelling.

22. Mr. Gurto returned to the Pittsburgh VAMC podiatry clinic under the care of Dr. Scanlan on May 22, 2015. Despite being ten weeks post-operative Mr. Gurto continued with significant pain with continued point tenderness with palpation to the anterior ankle joint and dorsal naviculocuneiform joint region. Dr. Scanlan offered no explanation for the pain and discomfort and advised Mr. Gurto to transition to a gradual return to weight bearing. Dr. Scanlan referred Mr. Gurto to Synergy PT for physical therapy.

23. Mr. Gurto was seen by Synergy PT eleven times in the month of June with

continued pain, decreased range of motion and poor flexibility of the ankle and Achilles tendon.

24. On or about July 2, 2015, Mr. Gurto returned to the Pittsburgh VAMC podiatry clinic under the care of Dr. Scanlan. Dr. Scanlan reported, "He has continued to have difficulty placing his foot on the floor due to the pain. He feels as if the ball of his left foot strikes the ground before the heel and is compensating with locking the knee which is causing pain to the forefoot and knee."

25. On examination Dr. Scanlan found equinus deformity causing hyper extension of the knee. Dr. Scanlan offered a heel lift to offer more pain free ambulation. Dr. Scanlan failed to advise Mr. Gurto that his ankle was negligently and improperly fused in excessive plantar flexion which was preventing proper weight bearing progressions and resulting in talocalcaneal pain.

26. On or about July 29, 2015, Mr. Gurto returned to the Pittsburgh VAMC podiatry clinic but was seen by Dr. Holly Burns. Mr. Gurto reported that he was unable to walk on the left foot, causing his knee to hyperextend when he tries to put his foot on the ground.

27. On or about September 16, 2015, Mr. Gurto reported to the Pittsburgh VAMC Foot and Ankle Clinic under the care of Dr. Dane Wukich. Dr. Wukich reported that Mr. Gurto's ankle was improperly fused plantar flexed resulted in Mr. Gurto having to hyperextend his knee in order to get his foot flat on the ground. Mr. Gurto reported pain on the bottom of his heel as well as the anterior ankle significantly interfering with his daily activities.

28. On or about November 4, 2015, Mr. Gurto returned to the Orthopedic Foot and Ankle Clinic under the care of Dr. Wukich at Pittsburgh VAMC. Mr. Gurto had extensive pain in his left ankle and foot. Dr. Wukich found plantar flexion of the left ankle of 12 degrees due to Dr. Scanlan's improper surgery that is relatively fixed. The improper fusion resulted in Mr.

Gurto being unable to bring his heel to the ground when standing upright. CT scan of the left ankle revealed an incomplete fusion. Dr. Wukich discussed with Mr. Gurto undergoing surgery to remove the current hardware with a revision of the arthrodesis. Mr. Gurto was advised by Dr. Wukich that he would require a lateral approach with autograft of the fibula or allograft as needed and that he may require internal wound stimulation. It was also discussed that the surgical correction may not relieve any of the pain instead, because of the improper fusion may, in fact, make it worse requiring life-long bracing or even amputation secondary to chronic pain.

29. On or about February 17, 2016, Mr. Gurto returned to the Pittsburgh VAMC. A musculoskeletal exam demonstrated that he had plantar flexed left ankle and very limited subtalar motion. Mr. Gurto was complaining of pain in the anterior aspect of the ankle as well as the medial ankle with pain in the subtalar joint. X-rays and CT scans confirmed a non-union of the left ankle joint with plantar flex position.

30. Dr. Wukich made note that Mr. Gurto was complaining of pain 9 out of 10 with extreme difficulty walking on even ground or uneven hills as well as stairs, curbs, squatting, coming up on his toes, walking initially, walking greater than five minutes or of longer distances. Mr. Gurto was again warned he may require amputation.

31. On March 9, 2016, Mr. Gurto underwent a left ankle fusion with subtalar fusion removal of hardware and placement of a bone stimulator in the left ankle by Dr. Dane Wukich.

32. On or about March 12, 2016, Mr. Gurto remained in-patient post-operatively complaining of pain intensity of 8 of 10 which was aching, burning, crushing and shooting pain.

33. On or about March 23, 2016, Mr. Gurto returned to the Pittsburgh VAMC Orthopedic Clinic for post-operative examination. Mr. Gurto was post left tibiotalar calcaneal arthrodesis with Stryker TW intramedullary nail on March 9, 2016. The patient presented in a

bulky Jones dressing. The dressing was removed and Mr. Gurto was placed in a knee cast. The continued recommendation was for oxycodone every four hours as need for pain. He was continued non-weight bearing status.

34. On or about March 23, 2016, Mr. Gurto was diagnosed with a post-operative urinary tract infection which subsequently responded to a course of medication requiring involvement of infectious disease specialists.

35. On or about April 20, 2016, Mr. Gurto returned to the Orthopedic Surgery Clinic at the Pittsburgh VAMC under the care of Dr. Wukich. Mr. Gurto continued with complaints of shocking pain requiring oxycodone three times a day to control pain. Mr. Gurto was placed in a boot but there was concern that his heel was not touching the boot because the ankle remained plantar flexed. A wedge was required for the boot in order to have proper alignment.

36. On or about June 1, 2016, Mr. Gurto returned to Orthopedic Surgery Clinic at the Pittsburgh VAMC. He remained non-weight bearing in a CAM boot with crutches. Mr. Gurto remained plantar flexed from mid-foot. He was given a custom insert with a 1.5 heel lift and a prescription for custom boot as well as pain medication. Mr. Gurto continued to complain of pain at 6 out of 10.

37. On or about August 22, 2016, Mr. Gurto present to the Podiatry Clinic at the Cleveland VAMC with complaints of complications from his fusion. Mr. Gurto came under the care of Dr. McVey who diagnosed malposition of the left ankle and mid-foot as well as allodynia of the left leg and foot with concern for complex regional pain syndrome (CRPS.)

38. On or about August 22, 2016, Mr. Gurto returned to the Cleveland VAMC Podiatry Clinic with complaints of continued pain. It was recommended that he follow up with both prosthetics and pain management for his plantar flexed fusion and CRPS.

39. On or about October 3, 2016, Mr. Gurto returned to the Prosthetic Orthopedic Clinic in Cleveland for a fitting for modified shoes with a mid-foot rocker and heel lift due to the malposition of his foot.

40. On or about October 16, 2016, Mr. Gurto came under the care of the pain management clinic at the Cleveland VAMC. Mr. Gurto had difficulty finding pain management that he could tolerate.

41. On or about October 27, 2016, Mr. Gurto returned to the pain management clinic at the Cleveland VAMC for care for his CRPS due to his repeated ankle surgeries. Mr. Gurto was placed on Gabapentin as well as Duloxetin. Mr. Gurto continued to complain of pain and sleep disturbance. Mr. Gurto reported 6 out of 10 pain accompanied by hypersensitivity to touch along the shin, ankle and foot. Pain management recommended switching the Duloxetin to Nortriptyline and adding capsaicin cream to address the nerve pain.

42. On or about October 27, 2016, Mr. Gurto was also seen at the Podiatry Clinic at the Cleveland VAMC. On examination he was noted to continue to be in a CAM walker, walking with assistance of cane. Distal and pedal pulses were only 2 out of 4, with decreased hair growth and diffuse edema in the left foot with diffuse blanchable erythema. Noted were left lower extremity discoloration as well as hyperesthesia and hypersensitivity in the left foot. Severe equinus of the left foot at mid foot was found with the left foot plantar flexed. Dr. McVey recommended new prosthetics and to follow-up with pain management.

43. On or about December 23, 2016, Mr. Gurto returned to the Podiatry Clinic at the Cleveland VAMC. Mr. Gurto reported no improvement in pain.

44. On or about February 6, 2017, Mr. Gurto presented to the Emergency Care Department at the Cleveland VAMC complaining of worsening left ankle, infection and pain.

Mr. Gurto was noted to have growing purulent abscess at the left malleolar infection site.

45. While in the emergency department he was seen by a podiatry consult, Dr. Lisa Fuchs. Noted was a wound to the left lateral ankle over previous surgical site. The sinus tract with smaller pinpoint noted proximal to the wound and a granular base after minimal purulent material expressed from the wound at the previous surgical site. The decision made to remove Mr. Gurto's bone stimulator on an expedited basis.

46. On or about February 14, 2017, Mr. Gurto underwent surgery by Dr. Britney Logan and Dr. Jeffrey Whitaker for excision of the left lateral ankle wound and removal of bone stimulator.

47. On or about February 18, 2017, Mr. Gurto was notified that culture came back from the OR positive for staph. He required further antibiotic therapy. Mr. Gurto remained non-weight bearing and continue in the CAM boot.

48. On or about March 21, 2017, Mr. Gurto returned to the Podiatry Clinic at the Cleveland VAMC with continued complaints regarding his left ankle. Mr. Gurto reported shooting pain and numbness on top of his foot.

49. On or about July 17, 2017, Mr. Gurto presented to the Prosthetics Clinic at the Cleveland VAMC with complaint of pain and a modified gait. Mr. Gurto reported he was in pain all the time without relief and without resolution of his plantar flexed ankle.

50. Mr. Gurto has been recommended no options to correct his continued left ankle pain, deformity, gait deformity, and on-going complaints other than amputation.

51. Plaintiff Mr. Gurto has experienced catastrophic and devastating and orthopedic and neurovascular injury to his left ankle causing permanent injury, permanent and severe pain and suffering, abnormal gait, mobility dysfunction, risk of amputation, complex regional pain

syndrome and neuralgia.

52. Plaintiffs seek the full measure of economic and non-economic damages under Pennsylvania law including without limitation, pain and suffering, past and future medical expenses, disfigurement, humiliation, emotional distress, loss of enjoyment of life and life's pleasures and loss of future of economic horizons.

53. Plaintiff's injuries are due to the negligence of the defendant and not any action or failure to act by Plaintiffs.

## COUNT I-NEGLIGENCE

### PLAINTIFFS V. UNITED STATES OF AMERICA D/B/A PITTSBURGH VETERANS ADMINISTRATION MEDICAL CENTER/ DR. RICK SCANLAN

54. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

55. The negligence of Defendant United States of America d/b/a Pittsburgh Veterans Administration Medical Center/Dr. Rick Scanlan by and through its employees, servants, agents, apparent agents, ostensible agents and/or workmen, including specifically Dr. Rick Scanlan includes the following:

   a. Failing to properly diagnose and treat Darwin Gurto's osteochondral defect;

   b. Failure to properly perform a left ankle fusion and a left naviculocuneiform mid-foot fusion with proper alignment of the foot;

   c. Failure to recognize inappropriate fusion;

   d. Failure to recognize postoperative complications including significant pain, irregular gait, inability to bear weight, abnormal range of motion,

        improper foot balance and placement as indication of improper alignment;

e. Performing the surgery with excessive plantar flexion;

f. Failing to follow appropriately procedures and guidelines and protocols for performance of ankle fusion;

g. Negligently performing ankle fusion with excessive plantar flexion;

h. Failing to take all appropriate steps as to not increase the risk of injury and harm to Darwin Gurto;

i. Failing to adhere to all hospital and/or VA practices, policies and procedures to ensure appropriate alignment during an ankle fusion.

56. The negligence of the Defendant by and through its aforementioned agents, servants, workmen and/or employees as set forth above caused the injuries and damages suffered by Plaintiff Darwin Gurto.

57. Injuries to Darwin Gurto and Arnesta Gurto were caused solely by the negligence of the Defendant as set forth above and were not caused or contributed thereto by any negligence on the part of Darwin Gurto and his wife Arnesta Gurto.

58. The negligence of Defendant directly and proximately caused the injuries to Darwin Gurto and his wife Arnesta Gurto.

WHEREFORE, Plaintiff respectfully demands damages against all defendants individually, jointly and severally, in an amount in excess of Fifty-Thousand ($50,000) Dollars and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

## COUNT I-LOSS OF CONSORTIUM

### PLAINTIFF ARNESTA GURTO V. UNITED STATES OF AMERICA D/B/A PITTSBURGH VETERANS ADMINISTRATION MEDICAL CENTER/ DR. RICK SCANLAN

59.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

60.    Plaintiff Arnesta Gurto is the wife of Darwin Gurto and has suffered the loss of her husband's services, society, companionship, assistance, personal relations and consortium as a result of the defendant's conduct as stated above.

WHEREFORE, Plaintiff respectfully demands damages against all defendants individually, jointly and severally, in an amount in excess of Fifty-Thousand ($50,000) Dollars and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: _____/s/Thomas R. Kline_____
THOMAS R. KLINE, ESQUIRE
PA 28895
Tom.Kline@KlineSpecter.com

REGAN S. SAFIER, ESQUIRE
PA 79919
Regan.Safier@KlineSpecter.com
Attorneys for the Plaintiff
1525 Locust Street
Philadelphia, PA  19102
(215) 772-1000
(215) 735-5827 Fax

Dated: 1/9/18